42 F.3d 1399
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Judith Ann DALTON, Executrix of the Estate of Robert Dalton,
deceased, Plaintiff-Appellant,
v.
LOGAN MANUFACTURING CORPORATION, a Delaware corp.; Thiokol,
Inc., a Utah corp.; Morton International, Inc.,
Defendants-Appellees.
 No. 93-15991.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 14, 1994.*
Decided Nov. 17, 1994.
 
 Before: LAY,** PREGERSON and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 
 2
 This is a diversity product liability case arising under Nevada law. Robert Dalton, was a microwave engineer for TCI Corporation which maintained a series of cable microwave stations across Nevada. He was responsible for serving and repairing eight TCI sites, many of which were located on mountaintops. In the winter, Dalton was provided a Thiokol 1450 IMP snow tractor, which had been manufactured by the predecessor corporation of Morton, Inc. The Thiokol had a two-point lap seat belt. Dalton used the belt in routine operation but believed it was unsafe because it provided little restraint while he was wearing it. Dalton also found that the cab of the snow tractor was extremely flexible and when the machine was in operation, the cab would often buckle so that the door would open and the windows would fall out of their frames or break.
 
 
 3
 On February 16, 1990, Dalton was dispatched to a TCI microwave site on Hagentin Peak, approximately twelve miles east of Battle Mountain, Nevada. He drove a pickup truck and towed the snow tractor. On an icy incline on a desolate mountain road, the truck slipped backward and the trailer jack-knifed into the hillside embankment. He then decided to back the snow tractor straight up the slope of the embankment and down the road. He realized the maneuver would create "a danger of possible personal injury" to himself. He believed the seat belt and the tractor cab were unreliable, so he did not use the belt and left the door open so that he could jump out of the tractor if a rollover occurred. As he was backing the tractor off the trailer and up the embankment, the tractor slipped and the right track hit the trailer tipping the machine to the left. As the tractor began to roll over, Dalton jumped from the doorway.[1] He cleared the tractor and fell (he was "surprised at the length of the fall") and then presumably the snow tractor rolled over on him. Dalton incurred serious personal injuries and later died as a result of the cardiac injuries received in the accident.
 
 
 4
 Robert Dalton and his wife, Judith Ann Dalton, filed suit in the United States District Court in the District of Nevada alleging strict liability and enhanced injuries for the manufacturer's failing to make the tractor crashworthy.[2] The suit alleged the tractor did not have an adequate seat belt system and was not equipped with a proper rollover protection system. The defendants moved for summary judgment on the ground that the alleged defects did not proximately cause Dalton's injuries and that Dalton had assumed the risk of any injuries incurred. The district court granted summary judgment for each of the defendants and accordingly dismissed the complaint. The district court reasoned:
 
 
 5
 Plaintiffs concede that the alleged defect in the safety restraint system did not cause the subject accident but argue that it may have been a proximate cause of "enhanced injury" to Robert Dalton. Plaintiffs argue that the snow tractor was defective because it was equipped with a non-functional "two-point" lap belt restraint system, as opposed to a lap belt with shoulder harness restraint system[,] i.e. a "three-point" restraint system. Plaintiff contends that during a rollover the levers that protrude vertically between the operators legs could impale an operator who is restrained by a two point lap belt system only. Plaintiffs further argue that Dalton's belief that the safety restraint system was supposedly defective caused him to jump from the snow tractor and that whether plaintiff's decision was reasonably foreseeable by defendant is an issue of fact.
 
 
 6
 This Court finds that the alleged defect in the snow tractor's safety restraint system was not the proximate cause of plaintiff Robert Dalton's injuries. The argument that the injuries were enhanced by the seatbelt design is purely speculative. The defect must be a substantial contributing factor to plaintiffs [sic] injuries. There is no evidence that demonstrates a substantial link between the design of the seatbelt and the enhancement of plaintiff's injuries in this case. There is a distinction between viewing the evidence in the light most favorable to the nonmoving party and making assumptions on entirely unsubstantiated speculation. Plaintiffs have essentially asked the court to make the assumption that had Robert Dalton stayed in the snow tractor with the allegedly defective seatbelt fastened and the cab door closed that he still would have been injured AND that had a different safety restraint system been present and utilized he would not have been injured. Conclusory allegations cannot save plaintiff's case. No evidence exists that 1) shows had plaintiff Robert Dalton remained in the snow tractor wearing the existing seat belt he would have been injured in the roll over or 2) refutes that plaintiff Robert Dalton's off-loading of the snow tractor under dangerous conditions was the proximate cause of plaintiff's injuries.
 
 
 7
 Moreover, Plaintiff Dalton's decision to knowingly attempt a risky maneuver coupled with his contingency plan to jump from the snow tractor cannot be considered a reasonably foreseeable consequence of the alleged defect. Plaintiff, with full knowledge that a rollover could well occur and that he could sustain personal injury during such a rollover whether he stayed in the cab or tried to jump from it, proceeded with the extremely dangerous [maneuver] of off-loading the snow tractor. Plaintiff's decision to attempt this maneuver was the cause of his injury. When different minds can reasonably arrive but at one result, a fact issue becomes a question of law, justifying a district court in taking the issue away from the jury.... (citations omitted throughout).
 
 
 8
 We agree with the district court that plaintiff has not shown a colorable issue of material fact relating to the alleged defects contributing to Robert Dalton's injuries. He did not attempt to use the seat belt because his preconceived maneuver was to jump from the cab if it started to roll over. There is no evidence that the alleged defective seat belt contributed to Dalton's injuries in any way whatsoever. Similarly his complaint that the cab did not have a proper rollover protection system was not causal as a matter of law. Dalton's plan was to jump from the vehicle if it did start to roll over. He left the door open for that purpose. Plaintiff's theory of causation is purely speculative.
 
 
 9
 In view of our holding, we need not pass on the district court's ruling that Nevada law would bar plaintiff's claim under the doctrine of assumption of risk.
 
 
 10
 JUDGMENT AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In his deposition Dalton testified: "I waited probably a little too long to jump trying to correct the situation."
 
 
 [2]
 After the district court entered judgment and pending this appeal, Robert Dalton died as a result of his cardiac problems. Judith Ann Dalton, as the executrix of Robert Dalton's estate, is the sole plaintiff on appeal